United States District Court
Southern District of Texas
**ENTERED**
February 24, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DENNIS LEE RICHARDSON, | § | |
| TDCJ# 02204565, | § | |
| | § | |
| Petitioner, | § | CIVIL ACTION NO. H-22-3921 |
| | § | |
| v. | § | |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

State inmate Dennis Lee Richardson has filed a petition for a writ of habeas corpus under

28 U.S.C. § 2254, challenging his conviction and sentence for aggravated sexual abuse of a child

younger than fourteen.  (Docket Entry No. 1).  The respondent has answered and filed a copy of

the state court record.  He asserts that the petition should be denied because Richardson has failed

to establish that the state courts' rejection of his claims was objectively unreasonable.  (Docket

Entry Nos. 12, 13).  Richardson has filed a response. (Docket Entry No. 20).  Based on the

pleadings, the answer and response, the record, and the applicable law, the court denies the petition

for a writ of habeas corpus.  The reasons are explained below.

I.    **Background**

     A.    **Factual Background**

On direct appeal, the intermediate state court of appeals summarized the relevant facts as

follows:

> The charged offense occurred on or about July 2, 2000, when the complainant,
> Belle, then thirteen years old, went to visit a friend at an apartment complex where
> appellant also resided.  According to testimony at trial, appellant, who previously
> had been Belle's boyfriend, and another man (later a co-defendant) took Belle into
> an empty townhome and forced her to have sex with them.  Belle reported the

incident and underwent a rape-kit procedure for the collection of samples. For fifteen years the case stood stagnant. As part of an initiative to eliminate a backlog of sexual-assault-evidence collection kits, examiners evaluated the rape kit in Belle's case.

On June 23, 2016, the State charged appellant by indictment with aggravated sexual assault of a child, Belle.

*Richardson v. State*, 631 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2020, pet. ref.).[1]

## B.    State Court Proceedings

A grand jury in the 232nd District Court in Harris County, Texas, returned an indictment against Richardson in Cause Number 1505670 for the first-degree felony offense of aggravated sexual abuse of a child younger than fourteen. (Docket Entry No. 12-22 at 227); *Richardson*, 631 S.W.3d at 273. In May 2018, a jury found him guilty and sentenced him to sixty years in prison. (Docket Entry No. 12-22 at 240–41); *see also Richardson*, 631 S.W.3d at 273. In April 2020, the Fourteenth Court of Appeals affirmed Richardson's conviction, and in September 2020, the Texas Court of Criminal Appeals refused his petition for discretionary review. *See Richardson*, 631 S.W.3d at 272.

Richardson filed a state habeas application in November 2021. (*See* Docket Entry No. 12-21 at 19). As part of the state habeas record, Richardson's attorney, Ashely Burleson, filed an affidavit responding to Richardson's claims that he provided ineffective assistance of counsel. (*See* Docket Entry No. 12-22 at 170–72). In November 2022, the Texas Court of Criminal Appeals denied the state habeas application without written order. (Docket Entry No. 12-20).[2]

---

[1] Belle is a pseudonym used to protect the privacy of the complainant.

[2] Richardson argues that the lack of a written order weighs in his favor. Under AEDPA, it does not. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

### C.       Petitioner's Federal Habeas Petition

Richardson's federal habeas petition asserts the following claims:

(1)  Trial counsel provided ineffective assistance by:

      A.  pursuing a promiscuity defense that was unsupported by the law or facts;

      B.  failing to file a motion to suppress DNA evidence because the magistrate's name on the warrant was illegible;

      C.  eliciting harmful evidence of Richardson evoking his right to counsel and right to remain silent during cross- examination of Sgt. Garza;

      D.  waiving, without his consent, privileged attorney-client communication regarding Richardson being a suspect and failing to object thereto;

      E.  failing to properly object to prosecutor intrusion into the attorney-client relationship regarding whether Richardson had information or exculpatory evidence to turn over to the District Attorney and failing to pursue an adverse ruling;

      F.  failing to object to the prosecution asking Richardson veracity questions about B.T., Sgt. Garza, C.Y. and A.N. during cross-examination; and

      G.  cumulative error; and

(2)  Appellate counsel provided ineffective assistance by:

      A.  failing to argue that denial of Richardson's motion to quash the search warrant affidavit, search warrant, and search warrant return was an abuse of discretion; and

      B.  failing to argue that the denial of his motion to suppress his arrest was an abuse of discretion; and

(3)  Petitioner's DNA was unlawfully searched and seized.

(Docket Entry No. 1).

The respondent answered the § 2254 petition, arguing that Richardson's claims lack merit and should be dismissed.  (Docket Entry No. 13).  Richardson has filed a response.  (Docket Entry No. 20).

## II.    The Applicable Legal Standards

### A.    The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas corpus is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  *See Woodford v. Garceau*, 538 U.S. 202, 205–08 (2003).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application  of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (quoting 28 U.S.C. § 2254(d)); *Cobb v. Thaler*, 682 F.3d 364, 372–73 (5th Cir. 2012) (same).  "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts."  *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404–08 (2002)).  To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

When a claim concerns a question of fact, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Martinez v. Caldwell*, 644 F.3d 238, 241–42 (5th Cir. 2011). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)). A federal habeas court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id.* This court may consider only the factual record that was before the state court in determining the reasonableness of that court's findings and conclusions. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

When a claim challenges a mixed question of fact and law, the state court's determinations are entitled to deference "unless the findings were 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Martinez*, 644 F.3d at 242 (quoting § 2254(d)(1)). Generally, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) ("When

faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter.").   When, however, "a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington*, 562 U.S. at 98; *see also Salts v. Epps*, 676 F.3d 468, 480 n.46 (5th Cir. 2012) ("[W]here a state court summarily denies a petitioner's motion, and provides no statement of its reasons, 'the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'" (quoting *Harrington*, 562 U.S. at 98)).

### B.   Self-Represented Litigants

Richardson represents himself.  This court is required to construe petitions filed by self-represented litigants liberally.  *See Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) ("[Petitioner]'s pro se application for habeas relief is entitled to liberal construction.").  Pleadings by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers . . . ."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III.   Discussion

### A.   The Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under *Strickland*, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice to the defense as a result.  *See Strickland*, 466 U.S. at 687.   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result

unreliable." *Id.* Failing to show either deficient performance or prejudice is fatal to an ineffective assistance claim. *See id.*; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). "Like AEDPA, *Strickland* establishes a deferential standard," and in order to prevail on an ineffective assistance of counsel claim in a § 2254 proceeding, a petitioner "must prove both that his counsel's performance was objectively deficient and that his counsel's deficiency prejudiced him, and that no reasonable jurist could conclude otherwise." *Williams v. Thaler*, 684 F.3d 597, 604 (5th Cir. 2012); *see also Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Harrington*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." (citing *Strickland*, 466 U.S. at 690)). This is a "highly deferential" inquiry, in which "counsel is strongly presumed to have rendered adequate assistance" and that the challenged conduct was the product of reasoned trial strategy. *Strickland*, 466 U.S. at 689–90; *see also Pape v. Thaler*, 645 F.3d 281, 292 (5th Cir. 2011). To overcome this presumption, a defendant must identify counsel's acts or omissions that did not result from reasonable professional judgment. *Strickland*, 466 U.S. at 690. Counsel's error, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the outcome. *Id.* at 691 (citation omitted). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In short, a petitioner cannot demonstrate

prejudice by showing that, but for counsel's deficient performance, he would have been entitled to a new trial under state law. Rather, a petitioner must also demonstrate that counsel's deficient performance rendered the result of his trial unreliable or the proceeding fundamentally unfair." *Green*, 160 F.3d at 1043 (internal citation omitted).

"[T]he test for federal habeas purposes is *not* whether [the petitioner] made [the showing required by *Strickland*]." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). "Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim." *Id.* A petitioner's conclusory allegations of ineffective assistance of counsel will fail to rebut a state court's finding that his counsel was not deficient or that he was not prejudiced by his counsel's performance. *See Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983). "An assertion is conclusory if it relies on inferences without also setting forth the facts that support those inferences." *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. Jan. 31, 2024) (first citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 898–99 (1990); and then citing *Conclusory*, Black's Law Dictionary (11th ed. 2019)).

None of Richardson's arguments show that his counsel provided ineffective assistance.

### 1.    The Promiscuity Defense

Richardson argues that his counsel was ineffective for pursuing a promiscuity defense that lacked factual and legal support. (Docket Entry No. 1 at 6). Richardson's argument follows from two questions asked before the jury. The prosecution successfully objected to both.

> Q. Let me ask you this, Ms. Taylor, and I do this in all respect, but I've got to ask you this: Were you kind of known as the neighborhood ho, at that time?
>
> MS. STALLINGS: Your Honor, I'd object.

THE COURT: That is sustained. Ladies and gentlemen, disregard that question. Do not consider it for any purpose.  You may ask your next.

Q. (BY MR. BURLESON) Let's put it this way, did you have a reputation as being a loose woman?

MS. STALLINGS: Same objection, Your Honor.

THE COURT: Ladies and gentlemen, if y'all would, take a little break.

THE BAILIFF: All rise.

(Jury exits courtroom.)

(Docket Entry No. 12-4 at 113:20–114:8).  After the jury left the courtroom, the parties discussed whether Richardson's counsel would continue this line of questioning:

THE COURT: You may be seated. Ma'am, you may step down if you would like.

THE COURT: Do you have any other questions like that that you want to ask this lady?

MR. BURLESON: I was going to ask her if she had sexual relationships with these, with several other individuals; but I can see that's too sensitive of a topic.

THE COURT: Well.

MR. BURLESON: I do apologize, Your Honor. It wasn't intentional.

THE COURT: So is it correct you intend to move on away from this subject?

MR. BURLESON: Yes, Your Honor.

THE COURT: You may bring in the jury.

(*Id.* at 114:9–23).

Richardson's counsel's questions were improper under Rule 412, the "rape shield" rule. The prosecution objected, and the objection was sustained.  Counsel often ask questions that they know will elicit objections that the court will sustain; even without an answer, asking the question is sometimes the strategic choice.  As a general matter, the fact that defense counsel asked the

question that sought testimony barred by Rule 412 does not mean counsel acted unreasonably, even if, as Richardson argues, the questions were poor strategy in hindsight.  *See United States v. Valdez*, 973 F.3d 396, 404 (5th Cir. 2020) ("[T]he Sixth Amendment entitles a criminal defendant to *reasonable*, but not *perfect*, representation of counsel.").

The alleged error was not prejudicial, in any event.  These were two questions out of a four-day trial.  There was overwhelming evidence against Richardson.  DNA evidence and an in-court identification inculpated Richardson of the sexual assault of the then 13-year-old victim. (Docket Entry No. 12-5 at 45–101, 105–10, 172–85, 198–214).  The jury took under an hour to deliberate.  *See Richardson*, 631 S.W.3d at 273.  Richardson's defense counsel admitted that the case came down to whether the jury believed the DNA evidence against Richardson.  (Docket Entry No. 12-22 at 170).  The two questions challenged in this habeas petition were not material to the outcome of the case.  *See Bernard v. Cain*, No. 6:11-CV-0747, 2011 WL 7139127, at *7 (W.D. La. Dec. 30, 2011) ("[T]he DNA evidence establishing petitioner's guilt was overwhelming."), *report and recommendation adopted*, No. 6:11-CV-0747, 2012 WL 314861 (W.D. La. Feb. 1, 2012); *Lucas v. Dir.*, TDCJ-CID, No. 5:21CV9-RWS-JBB, 2024 WL 5297773, at *7 (E.D. Tex. Feb. 5, 2024) ("[T]he victim's testimony and the DNA evidence constituted strong evidence against petitioner."), *report and recommendation adopted*, No. 5:21-CV-9-RWS-JBB, 2024 WL 1288654 (E.D. Tex. Mar. 26, 2024), *appeal dismissed*, No. 24-40359, 2024 WL 5297770 (5th Cir. July 18, 2024), *reconsideration denied*, 125 F.4th 639 (5th Cir. 2025).

Richardson's counsel was not constitutionally ineffective in asking two questions about a witness's sexual history, and any error was not prejudicial.

### 2.    Failure to Move to Suppress DNA Evidence

Richardson argues that his counsel was constitutionally ineffective for failing to file a motion to suppress DNA evidence based on the facial invalidity of the search warrant because it had an illegible signature on it.  (Docket Entry No. 1 at 6–7; Docket Entry No. 20 at 18).  His counsel argued the issue before the state court:

> Your Honor, I'd like to point out that the affidavit for search warrant, the search warrant itself had problems.
>
> [. . .]
>
> The Judge's signature, by Texas Code of Criminal Procedure, 18.04 (5) is to be clearly legible. If you look at the search warrant, that Judge's signature is not clearly legible. In fact, to be honest, it took us a couple of weeks to find out exactly who it was. The officer's return is notarized, should be. In the return, she talks about an Exhibit A, describing the property seized. According to Texas Code of Criminal Procedure 18.10, a listing of the property seized is to be returned to the magistrate judge who signed the search warrant. If you look at the search warrant, there is no Exhibit A describing the property seized.
>
> In addition, Your Honor, the order of removal was never filled out. I mean, this -- the DNA was taken to Bode Lab, I believe, in Virginia with no order of removal. There's four things wrong with it: The Judge's signature, the officer's return is not notarized, there's no Exhibit A describing the property seized, according to the Texas Code of Criminal Procedure 18.10, and, again, the order for removal was never filled out.

(Docket Entry No. 12-4 at 183:24–184:1, 184:18–185:5).  The court denied the motion.  (*Id.* at 187:16).

Richardson's counsel did raise the "illegible signature issue." (Docket Entry No. 20 at 18).  Richardson's ineffective assistance of counsel claim fails on this point.

### 3.    References to Richardson's Right to Counsel and to Remain Silent

Richardson argues that his counsel was constitutionally ineffective for referring to his invocation of the right to counsel during an interview with the police and that he chose to remain silent until he could speak with his attorney.  (Docket Entry No. 1 at 7; Docket Entry No. 20 at

11

25–29).  Below are excerpts from defense counsel's questioning about Richardson's right to an

attorney:

> Q. Let's go back to the interview you did with my client prior to the, taking the buccal swab. Where did that occur?
>
> A. That occurred at –
>
> THE COURT: The screen, can you turn it off? Thank you.
>
> A. It occurred at Harris County Jail.
>
> Q. (BY MR. BURLESON) And you're aware that he wanted a lawyer, correct?
>
> A. Yes, he did indicate later on.
>
> Q. Before he took the buccal swab, correct?
>
> A. Yes.
>
> Q. And you went ahead and took the buccal swab anyway, correct?
>
> A. That's correct with the signed form, yes.
>
> Q. Would his DNA have changed if you allowed him to speak to an attorney?
>
> A. No, sir, it would not have changed.
>
> Q. So, you didn't take the time to let him -- he lawyered up and you didn't let him speak to his attorney, correct?
>
> A. Well, I did tell him that he had the right to speak to his attorney; but at that moment, my purpose turned from attempting to obtain a voluntary interview as well as a voluntary sample to just executing the search warrant at that point.
>
> Q. Did you read him his Miranda rights at that time?
>
> MS. STALLINGS: Your Honor, I object to the relevancy of this line of questioning.
>
> THE COURT: It's overruled.
>
> Q. (BY MR. BURLESON) Did you read him his Miranda rights at that time?
>
> A. Yes, I did, sir.

(Docket Entry No. 12-5 at 54:18–56:2).   Below are excerpts of the cross-examination of this

incident:

> Q. Isn't it true that you even testified -- I'm sorry, that your attorney asked Sergeant Garza whether or not you were given the opportunity to talk to her on the date of your arrest after you were arrested, April 21st, 2016?
>
> A. Can you repeat that, please?
>
> Q. Do you remember getting the buccal swab, having the buccal swab put in your mouth when you were in custody April 21st, 2016?
>
> A. Yes, I do.
>
> Q. Do you remember that even your attorney asked Sergeant Garza when she testified, whether she read you all of your rights or not?
>
> A. Correct.
>
> Q. And you said, do you remember that you told her you did not want to waive your right to an attorney that you wanted your attorney present?
>
> A. No, I did not remember that.
>
> Q. So, that didn't happen; or it did happen?
>
> A. Repeat the question for me?
>
> Q. Is Sergeant Garza lying about the fact that she gave you an opportunity to talk to her on April 21st, 2016?
>
> A. Repeat it again? You moving too fast. I'm trying to understand it.
>
> Q. Did Sergeant Garza lie about the fact that when your attorney questioned her on Tuesday -- on Wednesday, that she gave you the opportunity to talk with her about the sexual assault of [Belle]?
>
> A. And I said I wanted my attorney present.
>
> Q. Yes, sir; is that right?
>
> A. Correct.

Q. You had your opportunity to give her information for her to investigate, didn't you?

A. Pardon me?

Q. You had an opportunity to give Sergeant Garza information two years ago, right?

A. Yes.

Q. And, in fact, she also told you that's fine, your attorney can call me, and you guys can give me information later?

A. No, she didn't never tell me that. She said I have a search warrant, and we must proceed.

(Docket Entry No. 12-6 at 128:8–129:25).

Richardson argues that his counsel's questions amounted to ineffective assistance because they opened the door to lines of questioning that the prosecution would not otherwise have been able to explore.  (Docket Entry No. 20 at 25–29).  The case law does not make it unconstitutional for a defendant to discuss his or her own right to counsel and right to remain silent.  *Cf. United States v. Priest*, 409 F.2d 491, 493 (5th Cir. 1969) (explaining that a defendant may waive the right to remain silent and the right to the presence of an attorney).  In some circumstances, opening the door to clearly harmful testimony about one's right to remain silent or to request an attorney may fall below an objective standard of reasonableness.  *See, e.g.*, *White v. Thaler*, 610 F.3d 890, 902 (5th Cir. 2010).  In those circumstances, the defense counsel did not open the door as "part of a strategy," *id.* at 900, and, worse, allowed the prosecution to use "post-arrest silence . . . as a prior inconsistent conduct to impeach," including by urging the jury at closing argument to convict based on the defendant's silence, *id.* at 902.

Those circumstances are not present here.  Defense counsel needed to develop reasonable doubt on the chain of custody and the reliability of the prosecution's DNA evidence.  (*See* Docket

Entry No. 12-22 at 170). Counsel did so by questioning Sgt. Garza about whether Richardson was allowed to exercise his constitutional rights around the time Sgt. Garza collected his DNA. (*See id.* at 171). If it was shown that Richardson could not access his attorney and assert his constitutional rights, a jury could be more likely to find that the DNA evidence was not obtained in compliance with the law or was otherwise faulty. The prosecution's cross-examination of Richardson refuted the argument that defense counsel attempted to develop, but that fact alone does not show constitutionally ineffective performance. Unlike in *Thaler*, Richardson's counsel did not open the door to a damning prior inconsistent statement or fact that ultimately became an important point in the prosecution's closing. Opening this limited issue was not unreasonable.

For the same reason, any constitutional error was harmless. The excerpted testimony was a limited portion of the four-day trial. Both DNA evidence and an in-court identification inculpated Richardson. The testimony about whether Richardson received his right to counsel or offered leads for Sgt. Garza was immaterial.

### 4.    The Alleged Waiver of Attorney-Client Privilege

Richardson alleges that his counsel waived attorney-client privilege without his consent. (Docket Entry No. 1 at 7). Richardson bases this argument on an incident at trial, when the prosecution commented on something that Richardson allegedly told his attorney:

> Q. (BY MS. STALLINGS) -- State's Exhibit No. 2. Can you take a look at that, please? Can you read on there whose buccal swab that is?
>
> A. It say my name.
>
> Q. And do you remember what the conclusion was? Not a possibility but the probability that your DNA is found in State's Exhibit No. 4 on the vaginal swab?
>
> A. That's what we heard, correct.
>
> Q. So explain to us exactly how it is your DNA ended up in the vaginal and rectal area of [Belle], who was 13 years old at that time?

A. Like I say, it's got to be contamination, tampering, or also it's a possibility they're saying this.

Q. The word is probability and please explain to us how it is a sperm fraction from your body is on that swab?

A. That's what I don't know. That's the mystery that we've been trying to find out, me and my attorney.

Q. In fact, the mystery, you knew about the mystery in 2002, didn't you?

A. No, I did not.

Q. You testified previously that Mr. Robins came and told you what had happened, that you were a suspect in a sexual assault, right?

A. No, I wasn't a suspect. I never was a suspect.

Q. That's not what you told your attorney?

A. I never told -- I said I heard about it, but I never was a suspect. No one never came to my house. I never -- I never was a suspect until 2016.

Q. Isn't it true that you were contacted back in 2002 by Sergeant Clemons?

A. No, I wasn't.

Q. Isn't it true that she made contact with you and gave you the opportunity to give information in July of 2002?

A. No, I wasn't.

Q. You understand that Sergeant Clemons can come back and testify as to that?

A. Yes, I hear.

(Docket Entry No. 12-6 at 126:18–128:7).

Richardson argues that his counsel must have leaked confidential attorney-client information because otherwise the prosecution's comment—"That's not what you told your attorney?"—would not make sense. (Docket Entry No. 20 at 31–32 & n.42). Richardson's counsel stated that he "never told the prosecutor that [his] client was a suspect" before his prosecution.

16

(Docket Entry No. 12-22 at 172).  He did "not recall Richardson ever telling [him] that."  (*Id.*).
Richardson responds by attesting that he discussed the subject of being a suspect during attorney-client visits.  (Docket Entry No. 12-22 at 122 ("Several subjects were discussed during these attorney-client meetings, including suspects.")).  Richardson's vague assertion does not establish that he and counsel discussed whether he was a suspect in an investigation in 2002, let alone whether his counsel then communicated those facts to the prosecution.  Instead, the prosecution was likely fishing based on Richardson's response two questions earlier that "[h]e and [his] attorney" had been trying to figure out the "mystery" of why his sperm was on the vaginal swab of a 13-year-old girl.  (*See* Docket Entry No. 12-6 at 126:1–22).  Richardson's argument is also inconsistent with his counsel's privilege objection later in this line of inquiry, which the court sustained.  (*Id.* at 130:1–11).  Notably, the prosecution did not try to argue that the privilege had been waived.  The evidence is insufficient to overcome AEDPA's deferential standard of review based on the state court's denial of Richardson's claim.

Richardson has not shown that he is entitled to habeas relief on this attorney-client-privilege argument.

### 5.      Questions About Providing Evidence to the Police

Richardson argues that his defense counsel was constitutionally ineffective for failing to request a limiting instruction, to move to strike testimony, or to move for a mistrial based on the prosecution's questions about whether Richardson had information or exculpatory evidence to turn over to the District Attorney's office.  (Docket Entry No. 20 at 35–36).  Richardson's argument is based on the following exchange:

 Q. Have you given your attorney any information to turn over to the District Attorney's Office over the past two years then?

 A. Did I do what?

> Q. Did you give any information to your attorney to turn over to the District Attorney's Office that would show why you're innocent?
>
> MR. BURLESON: I'm going to object. That's a violation of attorney/client privilege.
>
> THE COURT: It's sustained. It's sustained.

(Docket Entry No. 12-6 at 130:1–11).

Despite the successful objection, Richardson argues that his attorney should have done more to preserve the issue for appeal, such as request an instruction that the jury must disregard the question, move to strike, or move for a mistrial.  (Docket Entry No. 20 at 35).  Richardson offers no case law, let alone clearly established law, to support the argument that his counsel was deficient for lodging a successful evidentiary objection but failing to request additional relief.  His counsel successfully prevented questions that intruded into the attorney-client relationship.  Choosing not to draw attention to the matter by requesting greater relief was a reasonable, strategic choice within defense counsel's discretion.  *See Gonzales v. Cain*, No. CIV.A. 11-1846, 2011 WL 6826640, at *12 (E.D. La. Nov. 21, 2011) ("Counsel's decision not to ask for a special instruction was clearly within the range of sound trial strategy."), *report and recommendation adopted*, No. CIV.A. 11-1846, 2011 WL 6826637 (E.D. La. Dec. 22, 2011), *aff'd*, 525 F. App'x 251 (5th Cir. 2013); *Cordero v. Quarterman*, No. 2:05-CV-0140, 2008 WL 3874595, at *6 (N.D. Tex. Aug. 19, 2008) ("Trial counsel acted in an objectively reasonable manner in electing not to request such an instruction, given the chosen trial strategy and such does not constitute ineffective assistance of counsel").

Richardson's counsel was not constitutionally ineffective for failing to request additional relief after successfully making a privilege objection.

### 6. Questions to Richardson on Cross-Examination

Richardson argues that his counsel was ineffective for failing to object to the prosecution asking Richardson questions about whether Belle, Sgt. Garza, and other victims lied during their testimony. (Docket Entry No. 1 at 7; Docket Entry No. 20 at 36–38). It is well settled under Texas law that an attorney may not impeach the testimony of one witness with the testimony of other witnesses. *See Ex parte McFarland*, 163 S.W.3d 743, 755 n.37 (Tex. Crim. App. 2005). "[T]he Texas Court of Criminal Appeals has held that when the record is silent as to why trial counsel failed to object to the improper opinion testimony on the veracity of another witness's testimony, a defendant generally fails to meet his burden to establish deficient performance under the first prong of *Strickland*." *Alvarado v. State*, No. 12-17-00105-CR, 2018 WL 4474694, at *5 (Tex. App.—Sept. 19, 2018, no pet.) (citing *Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011)). Texas courts assume that the failure to object was based on a reasonable trial strategy. *See Lopez*, 343 S.W.3d at 143–44. Richardson offers no reason to find that the choice not to object was unreasonable or that the Texas courts' application of *Strikland* is contrary to clearly established Supreme Court case law. *See Martinez*, 644 F.3d at 242.

Richardson's claim that his counsel unreasonably failed to object to veracity questions does not warrant habeas relief.

### 7. Cumulative Error

For the reasons discussed, there was no error. If there was any error, it was harmless: DNA evidence and in-court identification placed overwhelming evidence of guilt before the jury.

### B. Appellate Counsel

Richardson argues that his appellate counsel was constitutionally ineffective for failing to appeal the denial of the motion to quash the search warrant that collected his DNA evidence and

the denial of the motion to suppress his arrest.  (Docket Entry No. 1 at 7; Docket Entry No. 20 at 39–42).  Neither argument warrants habeas relief.

First, Richardson's appellate counsel was not constitutionally ineffective for failing to appeal the trial court's denial of the motion to quash the search warrant.  Richardson offers no reason to believe that the denial of the motion to quash would have been successfully reversed on appeal.  *See Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986).  The motion to quash raised the factual question of whether the signature on the warrant was legible.  (Docket Entry No. 12-4 at 183:24–184:1, 184:18–185:5).  Richardson has not pointed to evidence that the trial court's factual determination that it was legible was erroneous, let alone evidence so strong that a court sitting in habeas review can conclude a Texas appellate court would have considered the Texas trial court's findings to be clear error.  *See Nguyen v. State*, No. 14-09-00995-CR, 2010 WL 2518250, at *2 (Tex. App.—Houston [14th Dist.] June 24, 2010, no pet.) (reviewing facts "in the light most favorable to the trial court's ruling").  Nor has he shown that any error in the validity of the warrant would have been fatal to the search and required suppression.  Doctrines, such as the good-faith exception, may still have required denial of the motion at trial.  *See, e.g.*, *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020) ("[W]e hold that the good-faith exception is not automatically precluded where, as here, the defect is an illegible magistrate's signature.").  There is no reason to believe that the DNA evidence collected by the search warrant should have been excluded from trial.

Second, Richardson's appellate counsel was not constitutionally ineffective for failing to appeal the trial court's denial of the motion to suppress his arrest.  Richardson's counsel raised the issue before the trial court, arguing that the arrest was without probable cause and improper because the "[c]omplainant was not acting like somebody that was forced to have sex, and that she

20

was not upset or disturbed at all." (Docket Entry No. 12-7 at 7:6–8; *see also* Docket Entry No. 12-8 at 253). The trial court denied the motion. (Docket Entry No. 12-7 at 7:13–14). Probable cause for Richardson's arrest was based on the victim's "positive identification" that the defendant was the perpetrator of a sexual assault of a child that resulted in a rape kit. (Docket Entry No. 12-5 at 27:9–29:22). There is no basis in the record to conclude that Richardson's appeal of the warrant to arrest him would have resulted in a reversal of his conviction or a new trial.

Richardson's appellate counsel was not constitutionally deficient.

### C.     Fourth Amendment Claims

Richardson argues that he was subjected to an unlawful search and seizure based on an invalid warrant for DNA. (Docket Entry No. 1 at 7; Docket Entry No. 20 at 42–47). Federal courts "generally are barred from reviewing Fourth Amendment claims on habeas review." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (citing *Stone v. Powell*, 428 U.S. 465 (1976)). The Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. The Fifth Circuit "has since interpreted an 'opportunity for full and fair litigation' to mean just that: 'an opportunity.'" *Janecka*, 301 F.3d at 320 (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192.

Richardson argues that he was not afforded an opportunity to pursue his Fourth Amendment claims because "trial counsel did not file a motion to suppress based on an illegible

signature." (Docket Entry No. 20 at 45). He also argues that he did not have an opportunity to raise the issue because there was no case law on the legible-signature issue at the time of his trial. (*Id.*). But Richardson had his opportunity to raise and argue the issue. Nothing stopped Richardson's counsel from raising the objections, which his counsel did. (Docket Entry No. 12-4 at 183:24–184:1, 184:18–185:5). That is all the opportunity the Fifth Circuit requires. *See Janecka*, 301 F.3d at 320 ("Janecka also was able to object at trial to the admission of evidence obtained as a result of the allegedly unlawful search.").

Richardson's Fourth Amendment claim does not warrant habeas relief.

**IV.     Certificate of Appealability**

Richardson has not requested a certificate of appealability, but Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a certificate of appealability as to claims denied on their merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). When relief is denied based on procedural grounds, a petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that jurists of reason "would find it

debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After carefully considering the record, the court concludes that Richardson has not met the requisite showing. There are no grounds to issue a certificate of appealability.

## V.    Conclusion

Richardson's petition for a writ of habeas corpus, (Docket Entry No. 1), is dismissed with prejudice. Any pending motions are denied as moot. A certificate of appealability will not issue. Final judgment is separately entered.

SIGNED on February 23, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge